UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CASE NO. 5:07-CV-18-R

LALA SMITH                                                                                    PLAINTIFF

v.

WYETH, INC., ET AL.                                                                      DEFENDANTS

**MEMORANDUM OPINION**

This matter comes before the Court on Defendants Wyeth, Inc. and Schwarz Pharma, Inc.'s Motion for Summary Judgment (Docket #41). Plaintiff Lala Smith has filed a response (Docket #47). Defendants have filed a reply (Docket #49). This matter is now ripe for adjudication. For the reasons that follow, Defendants' Motion for Summary Judgment is GRANTED.

**BACKGROUND**

Metoclopramide is a prescription drug used to treat gastric reflux symptoms. Defendant Wyeth is the successor in interest to the original manufacturer and distributer of metoclopramide, sold under the brand name "Reglan." In December 2001, Wyeth sold the rights to Reglan to Defendant Schwarz. Since then, Schwarz had been the manufacturer and distributer of Reglan brand metoclopramide.

Plaintiff Lala Smith took metoclopramide from June 2002 to May 2005. Plaintiff alleges that her use of metoclopramide caused her to develop severe and persistent Tardive Dyskinesia ("TD"). TD is a drug-induced neurological disease affecting a patients' brain chemistry, and loosely resembles Parkinson's disease.

Plaintiff acknowledges that she did not consume a drug manufactured by Defendants Wyeth or Schwarz. Defendants have filed this motion for summary judgment, arguing that

because they did not manufacture the product that injured Plaintiff, they are entitled to judgment as a matter of law.

## STANDARD

Summary judgment is available under Fed. R. Civ. P. 56(c) if the moving party can establish that the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. J. C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). The plaintiff must present more than a mere scintilla of evidence in support of his position; the plaintiff must present evidence on which the trier of fact could reasonably find for the plaintiff. *See id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). Mere speculation will not suffice to defeat a motion for summary judgment: "the mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Moinette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996).

## ANALYSIS

Under Kentucky products liability law, a plaintiff may advance numerous theories of liability. *Clark v. Hauck Mfg. Co.*, 910 S.W.2d 247, 250 (Ky. 247). Whatever products liability theory a plaintiff pursues, there are certain requirements that are found in all products liability cases. One such requirement is a defendant's product must have caused Plaintiff's injury to be liable under Kentucky products liability law.

> Whether we view the case as one presenting the problem of negligence in the preparation of the product, negligence in failing to adequately warn about the consequences of the use of the product, or improperly warranting the product to be fit for a particular purpose, or whether the problem is viewed as the sale of a product so defective as to be unreasonably dangerous because of an inherent defect or inadequate warning as to use, in every instance recited, the product must be the legal cause of the harm.

*Holbrook v. Rose*, 458 S.W.2d 155, 157 (Ky. 1970); *See also C & S Fuel, Inc. v. Clark Equip. Co.*, 524 F. Supp. 949, 954 (E.D. Ky. 1981) ("In Kentucky, products liability claims on theories of negligence or strict liability have one common denominator: the plaintiff must establish tht the product was the factual and legal cause of the harm.").

The identity of the product that caused a plaintiff's injury is the threshold requirement of a products liability claim. *Collins v. Ansell Inc.*, No. 3:98-CV-259-H, 2003 WL 22769266, at *2 (W.D. Ky. Nov. 19, 2003). In the present case, Plaintiff concedes that Defendants' product, Reglan, is not the legal cause of her injuries. Therefore, if this case is a products liability action, Defendants' motion for summary judgment should be granted.

The definition of a products liability action can be found in Kentucky's Products Liability Act ("PLA"). The PLA codified certain legal precedents concerning products liability law. *Monsanto Co. v. Westinghouse Electric Corp.*, 950 S.W.2d 811, 815 (Ky. 1997).

The Kentucky Supreme Court has stated that "[t]he PLA applies to all damage claims

3

arising from the use of products, regardless of the legal theory advanced." *Id*. at 814. No matter what the legal theory a plaintiff advances, "the[] central purpose is the same: recovery of damages for injury or property damage caused by a product." *Id.* In this case, the central purpose of Plaintiff's lawsuit is the recovery of damages for injury allegedly caused by the use of metoclopramide. Because Plaintiff's damage claims arise from the use of a product, Kentucky products liability law is applicable.

Furthermore, the PLA states that "a 'product liability action' shall include any action brought for or on account of personal injury, death or property damage caused by or resulting from the manufacture, construction, design, formulation, development of standards, preparation, processing, assembly, testing, listing, certifying, warning, instructing, marketing, advertising, packaging or labeling of any product." Ky. Rev. Stat. § 411.300(1).

Plaintiff argues that she has suffered personal injury caused by Defendants' warning, marketing, and labeling of Reglan. This falls under the statutory definition of a "product liability action." As a product liability action under Kentucky law, Plaintiff must show that Reglan was the legal cause of her TD. Because Plaintiff does not allege that she ever took Reglan, she has not alleged a claim under Kentucky products liability law.

Plaintiff argues that the facts of this case require a different analysis than traditional products liability analysis. Plaintiff states she is not attempting to hold Wyeth and Schwarz liable for the products they manufactured. Instead, she is attempting to hold Defendants liable for the statements they made concerning Reglan. Specifically, Plaintiff argues that Defendants distributed false and misleading information concerning Reglan, and that it is reasonably foreseeable that a doctor would rely on a Defendants statements concerning Reglan when

4

prescribing its generic alternative.

In effect, Plaintiff is arguing that Defendants' warning, labeling, and marketing concerning Reglan should also be seen as the warning, labeling, and marketing of products manufactured by companies that are Defendants' direct competitors in the prescription drug market. However, this ignores the fact that Reglan is a separate product from its generic competitors.

As shown above, Kentucky products liability law holds the manufacturer and distributor of a product responsible for injuries caused by the product. It does not recognize a cause of action against every company that is engaged in the business of manufacturing and distributing that product. Just because a company is in the same business as a tortfeaser, the company is not automatically liable for the harm caused by the tortfeasor's product.

Under Kentucky law, when a persons suffers an injury caused by the advertising and labeling of a product, it is the company that advertised and labeled the product that is responsible, not the company that advertised and labeled the product's competitors. As such, Defendants' statements concerning Reglan do not impose liability on Defendants for every metoclopramide tablet that is sold, regardless of the manufacturer. Whatever statements Defendants made concerning Reglan, it is undisputed that Reglan did not cause Plaintiff's TD.

Moreover, Plaintiff has submitted no case law where a court of any jurisdiction has made such a holding in a products liability case. "There is no legal precedent for using a name brand manufacturer's statements about its own product as a basis for liability for injuries caused by other manufacturers' products, over whose production the name brand manufacturer had no control." *Foster v. American Home Products Corp.*, 29 F.3d 165, 170 (4th Cir. 1994).

Instead, Plaintiff argues that the Food and Drug Administration's ("FDA") regulatory regime imposes liability on Wyeth and Schwarz for the labeling and safety of generic metoclopramide. The FDA has numerous regulations concerning the labeling of prescription drugs. For new drugs, the FDA requires an applicant to submit a new drug application ("NDA"), which requires costly and time-consuming studies of the drug's safety and effectiveness. *See* 21 U.S.C. § 355(b)(1). However, as a result of the Hatch-Waxman Act, a generic manufacturer is permitted to file an abbreviated new drug application ("ANDA"), which allows the applicant to provide data showing that the generic drug is the same as a previously approved drug in terms of its use, active ingredients, dosage, and strength. 21 U.S.C. § 355(j). This allows the generic manufacturer to not perform safety and effectiveness studies if it can show that its drug is equivalent to a previously approved drug.

Plaintiff argues that the FDA's regulations impose an heightened duty on the company that submitted the NDA. For this reason, Plaintiff believes that pharmaceutical products liability cases are different than all other products liability actions, in that the company who bears responsibility for the warnings in the drug label is not necessarily the manufacturer of the drug.

However, Plaintiff cites no authority holding that the FDA's approval process of a generic drug imposes liability on a name-brand manufacturer for the safety of its generic competitors. On the contrary, courts that have considered this argument have specifically rejected it. "The premarketing approval scheme Congress established for generic equivalents of previously approved drugs cannot be construed to create liability of a name brand manufacturer when another manufacturer's drug has been consumed. *Foster*, 29 F.3d at 170.

Furthermore, FDA regulations allow the manufacturer of a generic drug "'[t]o add or

6

strengthen a contraindication, warning, precaution or adverse reaction" or '[t]o delete false, misleading or usupported indications for use or claims for effectiveness' without prior FDA approval.'" *Id.* at 169. "Manufacturers of generic drugs, like all other manufacturers, are responsible for the representations they make regarding their products." *Id.* at 170. There is no basis for holding that FDA regulations alter Kentucky products liability law by imposing liability on a party for the contents of a label of a product that Defendants did not manufacture.

Ultimately, this is a products liability action. In a products liability action, regardless of a plaintiff's theory of liability, the plaintiff must meet the requirements of a products liability action under Kentucky law. One such requirement under Kentucky law is that the defendant's product must be the legal cause of a plaintiff's injury.

Plaintiff is attempting to hold Defendants liable for the labeling, warning and advertising of a product, Reglan, that was not the legal cause of her harm. Upon examination of applicable Kentucky law, the Court finds that in the generic drug context, Kentucky does not recognizes a cause of action against a manufacturer for its representations concerning its own product, based on an injury caused from the use of another manufacturer's product.

## CONCLUSION

For the above reasons, Defendants' Motion for Summary Judgment is GRANTED.

An appropriate order shall issue.